Jasen, J.
This appeal raises for our review the question of the correctness of the judgment of the Court of Claims entered upon the remittitur of this court.
During construction of the Thruway, improvements to State highways and facilities were included in the contracts for construction of the Thruway pursuant to an “ understanding ’ ’ between various State officials and the Thruway Authority that the Authority would be reimbursed for the cost of such improvements having no Thruway purpose. After completion of the Thruway, a dispute arose concerning the apportionment of various costs between the State and the Thruway Authority, and the Legislature enacted an Enabling Act (L. 1964, ch. 669) which conferred jurisdiction upon the Court of Claims to determine claims asserted by the Authority against the State for *213 improvements and additions to State highways and other facilities made at the direction or request of the State for the "sole benefit of the state and not required for thruway purposes ”. (L. 1964, ch. 669, § 1.) The Enabling Act also provided that any award thereunder “ must be without interest and shall be applied as a credit upon, and may not exceed, the amount of the balance due under the advances made by the state for thruway purposes. ” (L. 1964, ch. 669, § 5.) The unpaid balance of the advances made by the State for the Authority’s benefit was found by the Court of Claims to be $24,668,713.54.[1]
The trial resulted in an award of $30,842,427 (50 Misc 2d 957) and the resulting judgment, entered without interest, was affirmed by the Appellate Division (28 A D 2d 607). This court modified the order of the Appellate Division to eliminate credits for the depreciated value of highway pavement (pavement restoration credits) and for certain construction and grading at the intersection of the Thruway with the Palisades Interstate Parkway. In all other respects, the order appealed from was affirmed (22 N Y 2d 509, mot. for rearg. den. 22 N Y 2d 938).
Upon the Authority’s motion for entry of judgment in accordance with the remittitur of this court, the Court of Claims modified the original judgment by disallowing credits aggregating $9,337,560, and directed that judgment be entered for the Authority in the amount of $21,504,867, without interest. The credits disallowed by the Court of Claims include $1,397,054 originally allowed for certain construction and grading at the intersection of the Thruway with the Palisades Interstate Parkway, and $5,030,873 originally allowed for pavement restoration costs at 75 so-called “ I ” sites[2] where State highways were carried over the Thruway on bridges. Also disallowed were credits of $503,083 representing administrative and engineering costs allocable to pavement restoration at the “ I ” sites. The Appellate Division affirmed the judgment of the Court of Claims con *214 cerning these credits, and the respondent Authority does not dispute the disallowance of these credits in this court.
The Court of Claims also disallowed credits of $2,406,550 originally allowed for pavement restoration at 17 so-called “ J ” sites where the Thruway passes over State highways on bridges, and at 4 so-called special or " K ” and “ L ” sites where State highways were allegedly relocated to avoid intersecting the Thruway and its related construction. Concerning these 21 construction sites, the Appellate Division held that it was ‘ ‘ reasonably clear” that the Court of Claims in acting upon the remittitur of this court ‘ ‘ did not examine the proof as to each site involved or make independent determinations of necessity [for replacing highway pavement] with respect to each,” and remitted the case for appropriate findings by the Court of Claims. The Appellate Division majority noted that the rationale of the Court of Claims in denying interest on the judgment was “ unconvincing ”, but that determination of the problem was premature. Justice Herlihy wrote in a concurring and dissenting memorandum that an analysis of the Enabling Act demonstrated that the Legislature intended to preclude interest on the judgment.
Two issues are presented upon this appeal—whether the Appellate Division properly remitted the case to the Court of Claims for further factual findings concerning the necessity of replacing the pavement of State highways at the 17 “ J ” sites and 4 special sites, and whether the Authority is entitled to interest on the judgment.
The State contends that disallowance of the credits originally allowed for pavement restoration at the 17 “ J ” sites and 4 special or “ K ” and “ L ” sites in the aggregate amount of $2,187,774, plus related administrative and engineering costs of $218,776, was mandated as a matter of law by the remittitur of this court.
The so-called “ J ” sites involve grade separation structures where either the State highway was reconstructed under the Thruway or the Thruway was constructed over a State highway. The Authority claimed construction for the benefit of the State- at some 34 “ J ” sites, but credits for pavement restoration were awarded at only 17 “ J ” sites (presumably the pavement was not replaced at the other 17 “ J ” sites). The 2 spe *215 cial “ K ” sites involve relocation of and improvements to State highways in the vicinity of certain Thruway interchanges. The 2 special “ L ” sites involve State highways which were relocated to avoid intersecting the Thruway.
The disputed credits for pavement restoration represent the additional service life added to State highways in replacing old pavement with new pavement. The credits were calculated by first determining the cost of replacing the original pavement by percentage formulae (width of the original pavement/width of replacement pavement) from the cost of the highway pavement actually laid. The replacement cost of the original pavement as thus determined was depreciated based upon a finding of a 20-year service life for highway pavement. The amount of this depreciation was allowed as a credit to offset the Authority’s debt to the State. The Referees allowed the credits for pavement restoration at the 21 disputed sites upon the belief that the Authority’s obligation to replace pavement where necessary was limited to replacement of pavement, in kind, of equal service value to the old. The Referees reasoned, therefore, that the additional service value of new pavement was for the sole benefit of the State. The Authority was awarded the entire cost of that portion of the new pavement which exceeded the dimensions of the original pavement replaced. The Referees ’ report was confirmed by the Court of Claims, which was affirmed by the Appellate Division.
The decision of this court on the original appeal set aside the factual findings of sole benefit relating to pavement restoration as based upon an erroneous conclusion of law. This court disallowed the credits for pavement restoration[3] upon the ground that the replacement of highway pavement to eliminate potential grade crossings with the Thruway or its related construction (interchanges, etc.), or to otherwise further Thruway construction, was not reimbursable under the Enabling Act because the Authority was obligated to eliminate potential grade cross *216 ings and restore disrupted State highways and facilities.[4] The Court of Claims, therefore, correctly read our opinion as requiring, as a matter of law, disallowance of the credits for pavement restoration at all 21 disputed sites. For this reason, the Court of Claims properly disallowed the disputed credits originally allowed for pavement restoration. It follows, therefore, that there is no need for additional factual findings by the Court of Claims.
Engineering and administrative costs were calculated by the Eeferees as 10% of the cost of labor and materials required to restore the highway pavement. Logically, these administrative and engineering costs are part of the total cost of pavement restoration and must also be disallowed. The Court of Claims, therefore, properly denied the engineering and administrative credits pertaining to pavement restoration at the 21 disputed sites.
Both parties request that this court pass on the issue of whether interest is payable on the judgment of the Court of Claims entered on the remittitur of this court. The Appellate Division held that the interest question was premature, but stated that it found the reasoning of the Court of Claims in disallowing interest.on the judgment to be “ unconvincing ”. We find the interest question ripe for our determination, however, since the present judgment ($21,504,867) is less than the outstanding balance of the State advances to the Authority ($24,668,713.54). Thus, interest, if payable, could be credited up to the amount of $3,163,846.54, the balance of the advances the Authority owes to the State given the present judgment. *217 Nor does the fact that the Authority did not cross-appeal from the original judgment which was payable “ without interest ” preclude our review of this issue. The words “ without interest ” as used in the original judgment preclude only interest payable prior to entry of judgment. The Authority did not have occasion to raise the interest issue on the original appeal since the Enabling Act proscribed payment of interest “ on the award ”. The question of interest on the judgment, therefore, did not arise until entry of judgment upon the remittitur of this court, and was timely raised by the Authority at that time.
The Authority requests interest on the judgment from August 1, 1966, the date of entry of the original judgment of the Court of Claims. At issue is some $2,500,000 in interest. The Authority distinguishes interest on an award (Van Bel Co. v. Board of Educ., 241 App. Div. 609; CPLR 5001, 5002) upon which payment of interest is proscribed by the Enabling Act from interest on a judgment (CPLR 5003), and contends that subdivision 7 of section 20 of the Court of Claims Act provides for interest upon all judgments of the Court of Claims. Since the Enabling Act does not expressly prohibit interest on a judgment to be entered on the award, the Authority contends that it is entitled to interest on the money “ withheld ” as a matter of public policy.
It is undisputed that the Authority does not have a legally enforceable claim against the State apart from the Enabling Act. The Enabling Act (L. 1964, ch. 669) recognizes an equitable obligation on the part of the State and the Authority is entitled to nothing beyond that authorized by the Enabling Act. The issue posed, therefore, is what the Legislature intended concerning interest in enacting the Enabling Act (L. 1964, ch. 669).
The Enabling Act is a sui generis statute passed solely to determine the instant case, and the legislative history of the act is unavailable. Section 5 of the Enabling Act provides: “ Any award resulting from such claims must be without interest and shall be applied as a credit upon, and may not exceed, the amount of the balance due under the advances made by the state for thruway purposes.” The determinative language specifies an award. Section 20 (subd. 7) of the Court of Claims *218 Act reads: ‘ ‘ Interest shall be allowed on each judgment of the court of claims from the date thereof until the twentieth day after the comptroller is authorized to issue his warrant for the payment thereof or until payment, if payment is made sooner.” It appears from the use of the words “ award ” and “ judgment ” within the Enabling Act and the Court of Claims Act that an ‘ ‘ award ’ ’ as used in the Enabling Act is not something distinct from a judgment, but is the judgment itself. On the other hand, a judgment need not be an award (e.g., dismissing a claim). This explains the use of the two’words where appropriate in the two acts. Also, to allow interest on the original judgment entered on August 1, 1966 in effect would allow interest on items of the claim for part of the period which must necessarily elapse before a final judgment is entered. The period between entry of the original judgment and the entry of a final judgment on the remittitur of this court is part of the time required to finally determine what the ‘ ‘ award ’ ’ should be in this case.
The intention of the Legislature to preclude payment of interest on any judgment in favor of the Authority in this case is further indicated by the fact that section 5 of the Enabling Act limits the award (judgment) to a bookkeeping entry. The function of the Court of Claims in this ease was merely to determine the amount of the debt due from the Authority to the State. Under no circumstances was the State required to pay any money to the Authority. The most the Authority could obtain by way of relief was a credit to be applied against the amount which it owed to the State.
Section 4 of the Enabling Act provides that “the court of claims shall * * * render such judgments therefor as shall be just and equitable.” To allow payment of interest in this intergovernmental litigation would be unjust and inequitable in the light of the fact that the award (judgment) represents money advanced by the State to the Authority and which the Authority had use of interest-free. (See New York Thruway Auth. v. Hurd, supra, decided herewith.)
Section 20 (subd. 7) of the Court of Claims Act, quoted above, does not require a contrary result. Section 20 (subd. 7) applies to the normal situation in which money is required to be paid by the State to the claimant. In the instant case, the Enabling *219 Act restricts the award (judgment) to a credit upon the outstanding balance of the State advances. Since the original judgment embraced an award which exceeded the amount due from the Authority to the State, it was, in effect, a declaration that the balance of the debt to the State was satisfied. The judgment entered in the Court of Claims on the remittitur, since it reduces the award (judgment) to a sum which is less than the Authority’s outstanding indebtedness to the State, in effect, constitutes a pro tanto satisfaction of that indebtedness. The judgment, standing by itself, with no additional required State action, whether by the Comptroller or other State officer, effects the ultimate relief. Thus, section 20 (subd. 7) of the Court of Claims Act is inapplicable to this sui generis case.
We note that it was unnecessary for the Appellate Division to grant permission to appeal and certify a question of law since an appeal as of right lies to enforce the remittitur of this court. (Betzag v. Gulf Oil Corp., 298 N. Y. 358, 301 N. Y. 576; Lipton v. Bruce, 1 N Y 2d 631, 4 N Y 2d 975; Erbe v. Lincoln Rochester Trust Co., 3 N Y 2d 321, 4 N Y 2d 921, 5 N Y 2d 886.) For this reason, the certified question is not answered.
Accordingly, the order of the Appellate Division should be reversed, and the judgment of the Court of Claims should be reinstated.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Breutel concur.
Order reversed, with costs, and judgment of the Court of Claims reinstated. Question certified not answered.

. The obligation of the Authority to pay interest upon the unpaid balance of the State advances was the subject of another action. (See New York State Thruway Auth. v. Hurd, 57 Misc 2d 181, affd. 31 A D 2d 563, affd. 25 N Y 2d 150, decided herewith.) In that case, Special Term declared that no interest is owing to the State on the unpaid balance of the advances, and the Appellate Division and this court affirmed.

. The construction sites are designated according to the paragraphs in which they are grouped in the Authority’s claim.

. With the exception of Route 332 which this court held was relocated for the sole benefit of the State as a matter of law on the original appeal (22 N Y 2d, at p. 524, n. 5). The Court of Claims properly allowed the credit for pavement restoration at this site since the Authority was entitled to the full cost of construction. The State does not dispute allowance of this credit.

. Whether or not a bridge was constructed to eliminate a potential grade crossing of a State highway with the Thruway is insignificant. The ultimate issue is whether the construction for which credit is claimed was “ for the sole benefit of the state and not required for thruway purposes ”. (L. 1964, ch. 669, § 1.) If highway pavement was replaced because the original highway was relocated or realigned to eliminate a potential intersection with the Thruway or its related construction, this construction obviously is in lieu of constructing a bridge, and was required by the Authority’s obligation to eliminate grade crossings. Similarly, if Thruway construction damaged or destroyed the pavement of highways over which the Thruway was constructed, or if restoration of the original pavement of State highways was required for any other reason related to Thruway construction, restoration of highway pavement cannot be considered for the sole benefit of the State.