OPINION OF THE COURT
Memorandum.
Judgment unanimously reversed without costs, interlocutory judgment determining defendant to be 100% liable, entered pur *70 suant to an order granting plaintiffs motion to set aside the jury verdict, vacated, jury verdict apportioning liability 65% to defendant and 35% to plaintiff reinstated, and entry of judgment directed in accordance therewith, and matter remanded for a new trial limited to the issue of damages unless, within 30 days after service upon her of a copy of the order entered hereon, with notice of entry, plaintiff shall serve and file in the office of the Clerk of the Civil Court, Kings County, a written stipulation signed by her consenting, subject to apportionment, to (1) reduce the award for future pain and suffering to $240,000; (2) reduce the award for past lost earnings/impaired earning ability to $63,000; (3) reduce the award for future lost earnings/impairment of earning ability to $0; (4) reduce the award for future psychological expenses to $25,000; and (5) the remainder of the verdict, and to the entry of a judgment amended accordingly, without costs and disbursements; in the event that plaintiff so stipulates, then the judgment in her favor, as so reduced and amended, is affirmed without costs.
Plaintiff brought this personal injury action against defendant City of New York claiming that on May 22, 1993 she suffered a fracture of the talus bone of her foot when she stepped into a pothole in a crosswalk on a city street. A bifurcated trial was held, resulting in a liability verdict in favor of plaintiff finding defendant 65% liable and plaintiff 35% liable in the happening of the accident; following posttrial motions, the court set aside the jury’s liability findings, entered an interlocutory judgment upon liability in favor of plaintiff holding defendant 100% liable, and ordered a second trial of damages, resulting in entry of the judgment from which defendant appeals.
The court below properly refused to set aside the liability verdict in favor of plaintiff, as valid lines of reasoning and permissible inferences exist to support the jury’s verdict (see generally Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]). Because the City did not receive prior written notice of the defect in the street as required by Administrative Code of the City of New York § 7-201 (c) (2), plaintiff proceeded upon the theory that the City affirmatively created the defect at issue (see Amabile v City of Buffalo, 93 NY2d 471 [1999]). Although no documentation that the City did work on the street in question could be located, plaintiff introduced evidence from which a jury could reasonably infer this without resorting to speculation (see Schneider v Kings Highway Hosp. Ctr., 67 NY2d 743 [1986]). This included her own and a fact witness’s testimony that workers from the City or one of its agencies had been seen *71 working at the site in the months prior to her accident, and the fact that the street cut went directly from one city roadbed facility to another.
Although, as defendant notes, the lack of any record of a permit for the repairs, without more, does not support a finding that the City created the condition (see e.g. Bardi v City of New York, 293 AD2d 505 [2002]), the additional testimony plaintiff introduced provided sufficient evidence to support the liability verdict in this case. Viewing the evidence in the light most favorable to plaintiff as this court must (see Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 945 n [1997]; Cohen v Hallmark Cards, 45 NY2d at 499), the jury could rationally find that it was “more likely” or “more reasonable” that defendant, rather than some other entity, was responsible for the condition of the road (see Gayle v City of New York, 92 NY2d 936, 937 [1998]).
While plaintiffs fact witness had difficulty recalling the timing of the city construction work to which he testified, this went to the weight of the evidence and his credibility, not to the legal sufficiency of the evidence, and it is well settled that assessment of weight and credibility is a function of the trier of fact (see Dominguez v Manhattan & Bronx Surface Tr. Operating Auth., 46 NY2d 528, 534 [1979]). That the jury took this function seriously is evident from its long period of deliberation and its eventual 5 to 6 liability verdict.
Plaintiff also introduced expert testimony to the effect that the area was improperly backfilled and repaved. .While defendant argues on appeal that no foundation was established for the expert’s testimony, defendant failed to object to the testimony below, and thus its argument that the expert had no foundation for his testimony that the defect in the street was caused by defective backfilling following repairs is unpreserved for review upon this appeal (see John v City of New York, 235 AD2d 210 [1997]; Owens v City of New York, 2003 NY Slip Op 51133[U] [App Term, 2d & 11th Jud Dists 2003]). In any event, the expert’s reliance on the appearance of the area as the basis for his opinion that improper backfilling technique caused the subsidence and resulting hole in the street did not render his testimony speculative. There was testimony in the record that the photographs fairly and accurately depicted the condition of the street on the date of the accident, and the expert pointed to specific aspects of the photographs to support his opinion that the repair was done improperly (see Kozma v Biberfeld, 264 AD2d 817 [1999]). Moreover, the facts on which he relied in *72 testifying could be fairly inferred from the photographs, and the expert had visited the accident site (see Davidson v Sachem Cent. School Dist., 300 AD2d 276 [2002]).
Nor was the jury’s liability verdict against the weight of the evidence. It cannot be said that the evidence so preponderated in favor of defendant that the jury could not have reached its verdict on any fair interpretation of it (see generally Nicastro v Park, 113 AD2d 129 [1985]; see also Landau v Rappoport, 306 AD2d 446 [2003]).
No basis appears in the record to support defendant’s contention that the court’s charge to the jury upon liability was confusing. The court specifically stated that to find for plaintiff, the jury must determine the following:
“The defendant, City of New York, must maintain its streets in a reasonably safe condition for uses that are reasonably foreseeable. In this case the plaintiff must prove that the pedestrian crossing area which traverses 79th Street on the east side of Fifth Avenue in Brooklyn was not reasonably safe, that the City of New York or its agents created the defect or hazard through an affirmative act of negligence and that the negligence of the City of New York or its agent in creating the unsafe condition was a substantial factor in causing the plaintiff, Melanie Samuels, to fall.”
Defendant’s argument that the first sentence; pertaining to its duty to maintain, the streets in a reasonably safe condition, confused the jury by leading it to believe that it could find liability based on mere failure to repair, absent the required written notice, is without merit. This statement goes to the City’s duty, the breach of which is a required element of liability. Moreover, the following sentence specifically states that plaintiff had to prove that defendant created the condition at issue, not merely that it existed and that defendant should have known about it,
A new trial on the ground of jury confusion will be ordered only where “the jury was substantially confused by the verdict sheet and the charge and was thus unable to make a proper determination upon adequate consideration of the evidence” (Dunn v Moss, 193 AD2d 983, 985 [1993]; see also Tel Oil Co. v City of Schenectady, 303 AD2d 868, 872-873 [2003]; Szeztaye v LaVacca, 179 AD2d 555 [1992]). In addition to the court’s repeated statements in the charge that plaintiff had to prove *73 that defendant created the condition of the street that she encountered, both counsel summed up on this issue and the proof (or lack thereof) introduced upon it, and the jury’s verdict was internally consistent. In the overall context of the course of the trial, the parties’ arguments and the court’s charge, there is no indication that the verdict sheet or charge led to jury confusion (see Szeztaye, 179 AD2d at 555-556).
Defendant’s argument that the original jury’s finding that plaintiff was 35% at fault in the accident, coupled with its low damages award (which the court below vacated, resulting in retrial of damages before a second jury), indicates a compromise verdict, is without merit. While the question of defendant’s liability was hard-fought and resulted in a 5 to 6 verdict, the award in the first damages trial, while low enough in the view of the court below to deviate materially from what would be reasonable compensation, was not so shockingly low, or so internally inconsistent, as to warrant a finding of a compromise verdict (cf. Rivera v City of New York, 253 AD2d 597 [1998]; Farmer v A & T Bus Co., 96 AD2d 783 [1983]).
However, the court below erred in granting plaintiffs motion pursuant to CPLR 4404 (a) to set aside the jury’s comparative fault finding that plaintiff was 35% at fault in the happening of the accident. Plaintiff testified that she crossed the intersection in question many times, both in the course of traveling to work and while shopping, and that she had seen construction work being done there. Her expert witness testified that the defect had been present for a period of several weeks to several months, raising a permissible inference that plaintiff at least had an opportunity to notice that the defect was present. Plaintiffs own testimony to where she had been looking at the time of the accident was ambiguous. The issue of comparative negligence is a jury question in all but the clearest cases (see O’Neill v Mildac Props., 162 AD2d 441 [1990]; Holt v New York City Tr. Auth., 151 AD2d 460 [1989]). In light of the evidence introduced, it was not speculation for the jury to infer that a reasonable person would have come to know that the defect was present and could have taken steps to avoid it, and on this basis, to ascribe 35% of the fault to plaintiff; moreover, this conclusion represents a fair interpretation of the evidence (see Smith v Au, 8 AD3d 1 [2004]).
The jury’s awards of $108,000 for past impairment of earning ability, and $291,000 for future impairment of earning ability, cannot stand, as they are duplicative of the lost earnings awards *74 (see 1B NY PJI 1474 [2004 Supp]; see generally McDougald v Garber, 73 NY2d 246 [1989]). Although plaintiff argues that defendant failed to preserve this issue, the record reflects that defendant objected to the inclusion of the impairment of earning ability items in the charge and on the verdict sheet (see generally Wingate v Long Is. R.R., 95 AD2d 671 [1983]). The past and future lost earnings awards, totaling $315,500, are not supported by the record, given that only approximately $63,000 in past earnings, as noted by plaintiff, can be supported from the documentation she submitted.
The $100,000 award for future psychological expenses was not supported by the evidence, which included testimony that plaintiffs state of mind had improved and would continue to do so as she adjusted to her post-injury condition. The award for future psychological expenses is supported by the evidence only to the extent of $25,000 (see generally Guerrero v Djuko Realty, 300 AD2d 542 [2002]), and a new trial is required as to this item unless plaintiff also stipulates to reduce this portion of the verdict to $25,000.
A comparison with analogous cases demonstrates that the future pain and suffering award deviates materially from what would be reasonable compensation to the extent indicated (see e.g. McNamara v Hittner, 2 AD3d 417 [2003]; Kraus v Caliche Realty Estates, 302 AD2d 214 [2003]; Scannapieco v City of New York, 267 AD2d 373 [1999]; Morrisseau v State of New York, 265 AD2d 647 [1999]; Lemberger v City of New York, 211 AD2d 622 [1995]; Irby v City of New York, 184 AD2d 622 [1992]).The remainder of defendant’s contentions are unpreserved or without merit.
Pesce, EJ., Golia and Rios, JJ., concur.